909 F.2d 724
 59 USLW 2116, Fed. Sec. L. Rep. P 95,378,
17 Fed.R.Serv.3d 129
 Ira L. MENDELL, in Behalf of VIACOM, INC. and,
alternatively, Viacom International, Inc.,
Plaintiffs-Appellants,
v.
Keith R. GOLLUST, Paul E. Tierney, Jr., Augustus K. Oliver,
Gollust Tierney and Oliver, Gollust & Tierney, Inc.,
Coniston Partners, Coniston Institutional Investors, Baker
Street Partners, WJB Associates, Helston Investment, Inc.,
Viacom Inc., and Viacom International, Inc., Defendants-Appellees.
 Nos. 468, 562, Dockets 89-7068, 89-7686.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 21, 1989.
Decided July 25, 1990.
 
 Irving Malchman (Kaufman Malchman Kaufmann & Kirby, New York City, of counsel), for plaintiffs-appellants.
 Edwin B. Mishkin (James W. Pharo, Michael S. Sommer, Cleary, Gottlieb, Steen & Hamilton, New York City, of counsel), for defendants-appellees other than nominal parties Viacom Inc., and Viacom Intern., Inc.
 S.E.C. (Daniel L. Goelzer, Gen. Counsel, Jacob H. Stillman, Associate Gen. Counsel, Thomas L. Riesenberg, Asst. Gen. Counsel, Leslie E. Smith, Atty., and Paul Gonson, Sol., Washington, D.C., of counsel), filed a brief for the S.E.C., amicus curiae.
 Before OAKES, Chief Judge, CARDAMONE, Circuit Judge, and POLLACK, District Judge.*
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal deals with a suit brought to recover short-swing profits against insiders which was dismissed in the district court. It is clear from Supreme Court precedent that liability for short-swing trading will not arise unless the securities transactions at issue fall within the literal language of the statute that prohibits over-reaching by insiders. Here plaintiff's standing to bring suit against insiders, rather than such individuals' liability, is the question presented. In resolving this issue the words of the statute must still be carefully examined, but legislative purpose may also be considered where standing is not clearly precluded by the statutory language. Congressional policy is a stubborn thing; it permeates this area of the law. In resolving this case therefore we must not defeat Congress' plain policy by viewing standing too narrowly.
 
 BACKGROUND
 
 2
 Before us is an order of the Southern District of New York (Mukasey, J.), entered November 9, 1988 that granted summary judgment to defendants dismissing plaintiff's complaint for lack of standing. Plaintiff also appeals from an order dated May 23, 1989 denying his Rule 60(b) motion for relief from the November 9, 1988 order. Plaintiff appeals that dismissal of his action brought pursuant to Sec. 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78p(b) (1988). Section 16(b) provides that an owner of an issurer's security may bring an action in behalf of the issuer to recover short-swing profits realized by the corporation's officers, directors and principal stockholders. A "short-swing" profit occurs when a profit is realized on a purchase and sale, or sale and purchase, of stock occurring within a period of six months. The statute requires officers, directors and owners of more than ten percent of the issuer's stock (insiders) to disgorge short-swing profits back to the issuer.
 
 
 3
 The question presented is whether a shareholder whose shares in an issuer are converted by a business restructuring into shares of a newly formed parent corporation that owns all of the stock of the issuer loses standing to maintain a previously instituted Sec. 16(b) suit. Because we think the answer to the question posed is "no," the grant of summary judgment dismissing plaintiff's suit must be reversed.
 
 FACTS
 
 4
 Plaintiff Ira L. Mendell is a former shareholder of Viacom International Inc. (International). Defendants are limited partnerships, general partnerships, individual partners and certain corporations (Coniston or the Coniston defendants) that together invested in the stock of International. In 1986 defendants collectively owned more than ten percent of its stock. In January 1987 plaintiff filed a complaint alleging that Coniston was liable to International pursuant to Sec. 16(b) for profits arising out of Coniston's purchases and sales of International stock in 1986. Plaintiff asserted that on trades of International stock made between July and October 1986 the Coniston defendants acquired approximately 11 million dollars in short-swing profits at a time when they were insiders by virtue of their ownership of more than ten percent of International stock. The complaint also alleged that in October 1986 a demand was made upon International and its Board of Directors to institute a Sec. 16(b) suit against the Coniston defendants, but that though more than 60 days had passed no suit had been commenced by International.
 
 
 5
 Approximately six months later, in June 1987, after plaintiff had filed suit, International was acquired through a merger transaction by Arsenal Acquiring Corporation, a shell corporation formed for that purpose. All of International's stock was exchanged for a combination of cash and stock in Arsenal Acquiring's parent corporation called Arsenal Holdings, Inc., and Arsenal Acquiring then merged into International, which thereby became a wholly-owned subsidiary of the parent, Arsenal Holdings. As part of the merger, Arsenal Holdings changed its name to Viacom, Inc. (Viacom). Thus plaintiff, who held shares in International when he brought suit to recover insider profits for the issuer, now holds shares in its parent, Viacom. Viacom is the sole shareholder of International, and International is the parent corporation's sole asset.
 
 
 6
 At a pretrial conference held in February 1988 defendants asserted that plaintiff no longer had standing to maintain his Sec. 16(b) suit since he was no longer a shareholder of International. In March 1988 plaintiff served an amended complaint asserting that he had standing to bring the action in behalf of Viacom, the parent corporation, which he claimed was effectively the "issuer." Alternatively, he contended that he had standing to bring the action as a double-derivative action in behalf of International. Coniston moved for summary judgment. On November 9, 1988 the district court granted summary judgment to defendants because plaintiff lacked standing, ruling that "[s]uits to disgorge ill-gotten gains under Sec. 16(b) may be prosecuted only by the issuer itself or the holders of its securities." Mendell v. Gollust, [1988-89] Fed.Sec.L.Rep. (CCH) p 94,086 at 91,086, 1988 WL 123703 (S.D.N.Y.1988).
 
 
 7
 On January 9, 1989--after the opinion issued but before the judgment of dismissal was entered on January 17, 1989--plaintiff purchased a subordinated note issued by International. In March 1989 plaintiff made a motion pursuant to Fed.R.Civ.P. 60(b) asserting that he now had standing as a noteholder of International, and that the judgment entered some weeks earlier should be vacated. In an opinion dated May 23, 1989 the district court denied the Rule 60(b) motion stating that counsel's failure to advise his client to purchase the note earlier did not provide grounds to overturn the judgment. See Mendell v. Gollust, [Current Volume] Fed.Sec.L.Rep. (CCH) p 94,477, 1989 WL 56252 (S.D.N.Y.1989).
 
 
 8
 We heard oral argument on November 21, 1989, and on November 28 requested the Securities and Exchange Commission (SEC) to submit an amicus curiae brief setting forth its views on plaintiff's standing under Sec. 16(b). We now have the benefit of the SEC's amicus curiae brief filed on January 10, 1990.
 
 DISCUSSION
 I Section 16(b)
 
 9
 A. Policy Considerations and Legislative Purpose
 
 
 10
 In order to determine how broadly Sec. 16(b)'s standing requirements should be construed, we begin with a brief examination of the policy considerations and the legislative purpose that preceded the enactment of the statute. The Securities Act of 1934 in general and Sec. 16(b) in particular were passed to insure the integrity of the securities markets and to protect the investing public. See 15 U.S.C. Sec. 78p(b) (1988); Federal Securities Exchange Act of 1934, S.Rep.No. 792, 73d Cong., 2d Sess. 9 (1934) [Senate Report ]; 2 L. Loss, Securities Regulation 1037-38, 1040-41 (2d ed. 1961).
 
 
 11
 The Committee on Banking and Currency heard many instances where insiders either personally or through the medium of holding companies made large profits from the use of information not available to the public. Senate Report at 9. It concluded that the reporting requirements regarding changes in insider holdings and the provision making profits recoverable on sales or purchases made within six months would render difficult or impossible trading on advance information by insiders for profit. Id. The bill's provisions were for the express purpose of preventing the unfair use of inside information. Id. at 21.
 
 
 12
 Among the most vicious practices unearthed at the hearings before the subcommittee was the flagrant betrayal of their fiduciary duties by directors and officers of corporations who used their positions of trust and the confidential information which came to them in such positions, to aid them in their market activities.
 
 
 13
 Stock Exchange Practices, Report of the Committee on Banking and Currency, S.Rep.No. 1455, 73d Cong., 2d Sess. 55 (1934). Hence, Congress envisioned Sec. 16(b) as a remedial law that would deter those "intrusted with the administration of corporate affairs or vested with substantial control over corporations [from using] inside information for their own advantage." Id. at 68.
 
 B. Judicial Construction of Sec. 16(b)
 
 14
 Since its passage the Supreme Court has construed Sec. 16(b) in a number of cases. In the earliest, Blau v. Lehman, 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962), it refused to hold an entire partnership liable for short-swing profits as an insider when one of its members was a director of the issuer because the plain language of Sec. 16(b) did not provide for partnership liability, though the director was susceptible to suit in his individual capacity for the profits he realized. Id. at 411-14, 82 S.Ct. at 455-57. In Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973), a tender-offeror that purchased more than ten percent of the stock of Kern County Land Co. had its shares of Kern converted into new Tenneco stock when Tenneco merged with Kern in a defensive transaction. The tender-offeror negotiated a contract to sell to Tenneco the shares it would receive after the merger. Writing that traditional cash-for-stock purchases fall within Sec. 16(b), but that certain "unorthodox" transactions are not so easy to resolve, the Court observed that these "borderline" transactions are within the statute's reach if they are a vehicle promoting the evil Congress sought to prevent. Id. at 593-94, 93 S.Ct. at 1744. The Court noted that the transaction in question was not based on a statutory insider's information and therefore was not vulnerable to the speculative abuse barred by Sec. 16(b), and held that neither the exchange of shares in the merger nor the execution of the option contract constituted a "sale" under Sec. 16(b). See id. at 600-01, 93 S.Ct. at 1747-48.
 
 
 15
 In Reliance Electric Co. v. Emerson Electric Co., 404 U.S. 418, 92 S.Ct. 596, 30 L.Ed.2d 575 (1972), Emerson Electric, a holder of more than ten percent of Dodge Manufacturing Co., made two sales of stock within six months after purchasing it, the first of which reduced its holdings to less than ten percent. The question was whether the profits from the second sale, made within six months of its purchase but not while Emerson was a ten percent holder, were recoverable by the corporation under Sec. 16(b). In holding that they were not, the Supreme Court observed that a ten percent owner must under the statute be such " 'both at the time of the purchase and sale ... of the security involved,' " 15 U.S.C. Sec. 78p(b), and since Emerson Electric was not such an owner at the time of the second sale, the method it had used to avoid liability was one permitted by the statute. 404 U.S. at 422-23, 92 S.Ct. at 599-600. The Court reasoned that, because liability under the statute is predicated upon objective proof, a trader's intent and/or motive is irrelevant and hence, Emerson Electric was not liable under Sec. 16(b). Id. at 425, 92 S.Ct. at 600. In Reliance the statutory language was clear; only where differing constructions of Sec. 16(b)'s terms are possible may a court interpret the statute in a way that serves Congress' purpose. Id. at 424, 92 S.Ct. at 600. Here, we are faced with the latter scenario.
 
 C. Broad Interpretation of Sec. 16(b)
 
 16
 When the statute permits interpretation the section traditionally has been read broadly in view of its remedial purposes. The disgorgement provision is aimed at deterring insider trading by removing the profits from "a class of transactions in which the possibility of abuse [is] believed to be intolerably great." Id. at 422, 92 S.Ct. at 599. The statute presumes that insiders in a company have access to nonpublic information regarding its operation and will use that information when trading in the issuer's stock, and thus proof of the actual use of such inside information is not required. See Foremost-McKesson, Inc. v. Provident Sec. Co., 423 U.S. 232, 243, 251, 96 S.Ct. 508, 519, 46 L.Ed.2d 464 (1976); Reliance Elec., 404 U.S. at 422, 92 S.Ct. at 599; Smolowe v. Delendo Corp., 136 F.2d 231, 235-36 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).
 
 
 17
 We and most other courts have adopted a "pragmatic" approach, construing Sec. 16(b) in a manner that seems most consistent with Congress' purpose. See Kern County Land Co., 411 U.S. at 594, 93 S.Ct. at 1744 ("the courts have come to inquire whether the transaction may serve as a vehicle for the evil which Congress sought to prevent"); Reliance Elec., 404 U.S. at 424, 92 S.Ct. at 600 ("where alternative constructions of the terms of Sec. 16(b) are possible, those terms are to be given the construction that best serves the congressional purpose of curbing short-swing speculation by corporate insiders."); Feder v. Martin Marietta Corp., 406 F.2d 260, 262 (2d Cir.1969) (courts interpret Sec. 16(b) in ways most consistent with legislative purpose "even departing where necessary from the literal statutory language."), cert. denied, 396 U.S. 1036, 90 S.Ct. 678, 24 L.Ed.2d 681 (1970).
 
 II Standing Under Sec. 16(b)
 A. Broadly Construed
 
 18
 To effectuate its purposes the statute permits "the owner of any security of the issuer" to bring suit in behalf of the corporation. 15 U.S.C. Sec. 78p(b). Such person may institute a Sec. 16(b) claim in behalf of the issuer if the latter fails to bring suit after the stockholder so requests. See id. Because such a suit is not brought in his own, but rather the corporation's behalf, Sec. 16(b)'s standing requirements have been given wide latitude. See Pellegrino v. Nesbit, 203 F.2d 463, 466 (9th Cir.1953); see also Prager v. Sylvestri, 449 F.Supp. 425, 429 (S.D.N.Y.1978) (demand requirement of Sec. 16(b) exists for benefit of the issuer; defendant insider may not assert lack of demand as a defense.). A Sec. 16(b) plaintiff performs a public rather than a private function and is seen as an instrument for advancing legislative policy. See Magida v. Continental Can Co., 231 F.2d 843, 846-47 (2d Cir.), cert. denied, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956).
 
 
 19
 The standing requirements for shareholder derivative suits are not applicable to a Sec. 16(b) plaintiff. See Blau v. Mission Corp., 212 F.2d 77, 79 (2d Cir.), cert. denied, 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138 (1954); Rothenberg v. United Brands Co., [1977-78] Fed.Sec.L.Rep. (CCH) p 96,045 at 91,691-92, 1977 WL 1014 (S.D.N.Y.); aff'd mem., 573 F.2d 1295 (2d Cir.1977); 2 L. Loss, Securities Regulation at 1045-47. Generally a derivative plaintiff must be a shareholder at the time of the transaction of which he complains, the action must not be a collusive one to confer federal jurisdiction, and the complaint must allege with particularity the efforts made to obtain the desired action. See Fed.R.Civ.P. 23.1. In contrast, in a Sec. 16(b) suit the complaining stockholder need not have held his securities at the time of the objectionable transaction. See Blau v. Mission Corp., 212 F.2d at 79. Suit may be brought by the holder of any of the issuer's securities--equity or debt--regardless of whether the security held is of the same class as those subject to disgorgement as short-swing profits. See 15 U.S.C. Sec. 78p(b); Smolowe, 136 F.2d at 241; 2 L. Loss, Securities Regulation at 1046. Further, the amount or value of a plaintiff's holdings or his motives for bringing suit are not relevant. See Magida, 231 F.2d at 847-48.
 
 
 20
 In keeping with the general rules of Sec. 16(b) analysis, the question of whether a plaintiff has standing to bring suit is, in part, determined by whether the policy behind the statute is best served by allowing the claim. Thus, in Blau v. Oppenheim, 250 F.Supp. 881 (S.D.N.Y.1966) (Weinfeld, J.), the district court permitted a shareholder of a parent corporation to bring a Sec. 16(b) suit on behalf of its issuer-subsidiary. There the company that issued the stock that was traded in contravention of the statute was dissolved in a merger. The court reasoned that where the issuer is merged out of existence, none of the original shareholders are left to bring suit. Id. at 886. A holding that would allow only the shareholders of the now defunct issuer to remedy the statutory violation would therefore make the statute unenforceable. See id. at 886-87; see also Portnoy v. Kawecki Berylco Indus. Inc., 607 F.2d 765, 768 (7th Cir.1979). In order to avoid a result that was contrary to the purpose of the statute the court interpreted the word "issuer" to include the parent corporation. Oppenheim, 250 F.Supp. at 884.
 
 
 21
 Defendants urge that we limit Oppenheim to permit a shareholder of a parent corporation to maintain a Sec. 16(b) suit with respect to the subsidiary's stock only when the original issuer did not survive a merger into the subsidiary. They contend that when the issuer survives the merger as a viable corporate entity enforcement of the statute by the issuer or by its shareholder, the parent corporation, is still available. We disagree with defendants' rationale; it would have been equally applicable to Oppenheim because there the Sec. 16(b) claim could have been brought by the issuer's survivor or by its shareholder, the parent corporation, yet the court did not restrict standing to those entities. The plaintiff in Oppenheim actually had less claim to standing than the plaintiff in the instant case, because in Oppenheim the plaintiff never held shares in the original issuer, but purchased shares in the parent only after the merger. Further, we do not rely on the interpretation of "issuer" set forth in Oppenheim, but focus instead on whether a security holder loses his standing as an "owner" of securities when his stock is involuntarily converted in a merger.
 
 
 22
 The probability that the statute will not be enforced is present to the same degree when the original issuer survives the merger as a wholly-owned subsidiary of the parent corporation as it was in Oppenheim. In such circumstance no public shareholders remain to bring an action. As a practical matter it is unrealistic to believe that the issuing corporation will bring an action against itself or its insiders. See Rothenberg, [1977-78] Fed.Sec.L.Rep. p 96,045 at 91,691; cf. Lewis v. McAdam, 762 F.2d 800, 802 (9th Cir.1985) (per curiam); Magida, 231 F.2d at 846. Leaving insiders to police themselves is not only contrary to Sec. 16(b)'s private shareholder enforcement purpose, but also can be expected to secure the same results as those obtained when a fox guards a chicken coop. Concededly, some protection against insider abuse may still be available through a stockholder's derivative suit for breach of fiduciary duty. Yet such a suit is not as effective as a Sec. 16(b) claim because shareholders are subject to the already noted more stringent standing requirements of Rule 23.1, and, in addition, the complaint may be countered with subjective considerations of intent or good faith, such as a business judgment defense. Cf. Oppenheim, 250 F.Supp. at 887.
 
 
 23
 Moreover, the SEC endorses the view that the policy of Sec. 16(b) is best effectuated by allowing plaintiff to maintain this suit. See Ownership Reports and Trading By Officers, Directors and Principal Stockholders, Securities Exchange Act Rel.No. 26333 (Dec. 2, 1988), 42 SEC Docket 570, 53 Fed.Reg. 49997 (Dec. 13, 1988) [SEC Rel. No. 26333]. Although not binding on us, the SEC's insights in construing securities laws are entitled to consideration. See Basic Inc. v. Levinson, 485 U.S. 224, 239 n. 16, 108 S.Ct. 978, 987 n. 16, 99 L.Ed.2d 194 (1988); TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 n. 10, 96 S.Ct. 2126, 2132-33 n. 10, 48 L.Ed.2d 757 (1976).
 
 
 24
 Proposed SEC Rule 16a-1(h) would specifically define "owner" of a security as either a current beneficial owner of securities of the issuer at the time suit was filed or a former beneficial owner who was compelled to relinquish his holdings as a result of a business combination. See SEC Rel. No. 26333. While the proposed rule is inapplicable in the case at hand, cf. Mayer v. Chesapeake Ins. Co., 877 F.2d 1154, 1162 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990), it reflects the strength of the SEC's convictions.
 
 B. Standing Not Barred by Existing Law
 
 25
 Defendants and the dissenting opinion assert it is "settled law" that a security holder who commences a Sec. 16(b) suit must remain a security holder throughout the litigation and if he ceases to own the securities he loses his standing to continue the action. See Untermeyer v. Valhi, Inc., 665 F.Supp. 297 (S.D.N.Y.1987), aff'd mem., 841 F.2d 1117 (2d Cir.), aff'd on rehearing, 841 F.2d 25 (2d Cir.) (per curiam), cert. denied, 488 U.S. 868, 109 S.Ct. 175, 102 L.Ed.2d 145 (1988); Rothenberg, [1977-78] Fed.Sec.L.Rep. (CCH) p 96,045; see also Lewis, 762 F.2d 800; Portnoy, 607 F.2d 765; Staffin v. Greenberg, 509 F.Supp. 825, 840 (E.D.Pa.1981), aff'd on other grounds, 672 F.2d 1196 (3d Cir.1982). That conclusion is not mandated either by the statutory language or by the cited cases.
 
 
 26
 First, the language of the statute speaks of the "owner" of securities; but such language is not modified by the word "current" or any like limiting expression. The statute does not specifically bar the maintenance of Sec. 16(b) suits by former shareholders and Congress, had it so desired, could readily have eliminated such individuals as plaintiffs. The broad meaning of the word owner better accords with the remedial purpose of the statute. Second, although some decisions have denied standing to a Sec. 16(b) plaintiff on the grounds that he is not a current security holder, those cases are distinguishable. The district court, for example, relied upon Untermeyer v. Valhi, Inc., which dealt with a plaintiff who owned stock of the parent corporation, but who never owned stock of the company that issued the shares traded in contravention of Sec. 16(b). 665 F.Supp at 298. Thus, even without a merger the Untermeyer plaintiff would not have had standing. In contrast, plaintiff here brought a valid Sec. 16(b) suit while he was a current shareholder of the issuer, and but for the merger standing would not be in issue here.
 
 
 27
 In Rothenberg v. United Brands Co., also cited by the district court, the shareholders received cash in the merger instead of securities. The crucial factor considered by the trial court was that in a cashout merger the former shareholders maintain no continuing financial interest in the litigation. See Rothenberg, [1977-78] Fed.Sec.L.Rep. (CCH) p 96,045 at 91,692. In the present case all former International shareholders obtained, as a result of the merger, shares of International's parent corporation, and plaintiff, as one of them, continues to have at least an indirect financial interest in the outcome of this lawsuit. Two additional reasons caution against an overbroad application of Rothenberg: That decision noted that even if plaintiff had standing the Sec. 16(b) claim failed on the merits, see id. at 91,693-94; and the court's standing analysis was premised on an analogous application of Rule 23.1 which, as noted above, does not govern shareholders bringing Sec. 16(b) claims. Id. at 91,691-92.
 
 
 28
 Contrary decisions of our sister circuits are similarly distinguishable. See Lewis, 762 F.2d at 801 (plaintiff shareholder of parent but never held stock in the issuer or its surviving subsidiary); Portnoy, 607 F.2d at 767-68 (cashout merger left plaintiff with no continuing financial interest in the litigation; plaintiff's alternative status as a shareholder in the grandparent corporation gave no standing for Sec. 16(b) suit on behalf of the issuer). In the case at bar, the conversion of International stock into Viacom stock presents a novel situation where former shareholders have a continuing interest in maintaining suit in behalf of the issuer. We conclude, therefore, that under those unique circumstances the cases cited by defendants are neither controlling nor persuasive.
 
 
 29
 Here plaintiff's suit was timely, and while his Sec. 16(b) suit was pending he was involuntarily divested of his share ownership in the issuer through a merger. But for that merger plaintiff's suit could not have been challenged on standing grounds. Although we decline--in keeping with Sec. 16(b)'s objective analysis regarding defendants' intent--to inquire whether the merger was orchestrated for the express purpose of divesting plaintiff of standing, we cannot help but note that the incorporation of Viacom and the merger proposal occurred after plaintiff's Sec. 16(b) claim was instituted. Hence, the danger of such intentional restructuring to defeat the enforcement mechanism incorporated in the statute is clearly present.
 
 
 30
 Quite plainly, a rule that allows insiders to avoid Sec. 16(b) liability by divesting public shareholders of their cause of action through a business reorganization would undercut the function Congress planned to have shareholders play in policing such actions. See Oppenheim, 250 F.Supp. at 887; SEC Rel. No. 26333.
 
 
 31
 Permitting plaintiff to maintain this Sec. 16(b) suit is not barred by the language of the statute or by existing case law, and it is fully consistent with the statutory objectives. The grant of summary judgment must therefore be reversed. If it is established that profits were realized in contravention of the statute they should be disgorged to International. The section is designed to protect fairness interests, not provide compensatory relief. The result we reach will adequately protect the former International shareholders who now own International indirectly as shareholders of Viacom. Cf. American Standard, Inc. v. Crane Co., 510 F.2d 1043, 1060-61 (2d Cir.1974), cert. denied, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975).
 
 
 32
 Because the plaintiff has standing under Sec. 16(b), we do not reach the district court's rejection of plaintiff's standing argument based upon an alleged "double derivative" action. See Mendell, [1988-89] Fed.Sec.L.Rep. (CCH) p 94,086 at 91,087.
 
 
 33
 III Plaintiff's Standing as a Noteholder Under Fed.R.Civ.P. 60(b)
 
 
 34
 In light of our reversal of the November 9, 1988 order and subsequent judgment of dismissal gives plaintiff his requested relief, plaintiff's appeal of the motion brought pursuant to Rule 60(b) is to some extent mooted. Nevertheless, we write to affirm the district court's denial of the Rule 60(b) motion in order to emphasize that plaintiff's purchase of a senior subordinated note of International did not provide grounds to vacate the district court's initial order.
 
 
 35
 The relevant portions of Rule 60(b) provide that "upon such terms as are just, the court may relieve a party ... from a final judgment [or] order ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances. Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir.1986).
 
 
 36
 Plaintiff argues that he purchased the International note "as soon as it occurred to plaintiff's counsel (1) that any security holder of International could maintain a 16(b) action and (2) that notes of International were available to be purchased." We agree with the district court that counsel's ignorance of the law on this point cannot form the basis for relief under subdivision (1) of Rule 60(b). See id. at 62-63. Nor can we say that the district court abused its discretion when it denied relief under subdivision (6) of Rule 60(b). Plaintiff's acquisition of a note following an adverse ruling on his claim to standing as a shareholder did not present the kind of "extraordinary" circumstance that mandates relief to avoid an "extreme and undue hardship." See Ackermann v. United States, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir.1986), cert. denied, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987).
 
 
 37
 As a noteholder of International, plaintiff clearly has standing to bring a Sec. 16(b) claim in International's behalf. See 15 U.S.C. Sec. 78p(b). Yet his newly acquired noteholder status does not afford grounds to vacate an order premised on his status as a former shareholder.
 
 CONCLUSION
 
 38
 The district court's order entered May 24, 1989 is affirmed. Its order entered November 9, 1988 and the subsequent judgment of dismissal entered January 17, 1989 are reversed and the case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 39
 MILTON POLLACK, Senior District Judge, dissenting:
 
 
 40
 The majority's ruling departs from the unequivocal terms of the statute to be administered and from the prior case law of this Court applying the statute, and it conflicts with rulings of the other Circuits which have addressed the requirements of the statute, Sec. 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78p(b).
 
 
 41
 A corporate merger during the pendency of this suit has sparked the judicial controversy presented to this Court.
 
 
 42
 Plaintiff was the owner of stock issued by International (Viacom International Inc.) at the time he filed this suit. He seeks to recover short-swing profits of beneficial owners of more than 10% of the stock of International. During the pendency of the suit, the plaintiff ceased being an owner of International stock as the result of a corporate merger. The defendants then moved, successfully, to dismiss the complaint. That dismissal is on appeal to this Court.
 
 
 43
 International had been organized as a wholly-owned subsidiary of CBS Inc. for the purpose of owning the television program distribution and cable television businesses of CBS. The CBS interest in International was distributed to the CBS stockholders on a pro rata basis. Some time later, Arsenal Holdings Inc. ("Holdings") was organized for the purpose of acquiring International in a merger transaction which had a business purpose. A wholly-owned subsidiary of Holdings was merged with and into International, and, as a result of the merger, International remained a viable corporate entity but became an indirect, wholly-owned subsidiary of Holdings. Holdings changed its name to Viacom, Inc. ("Viacom"). Each share of Viacom stock, including plaintiff's stock, was converted into the right to receive (i) $43.20 and (ii) certain percentages of preferred and common stock of Viacom.[1] Plaintiff accepted the conversion and received cash and Arsenal Holdings (now called "Viacom") stock in the exchange.
 
 
 44
 Refined to simpler understanding of the implication of the corporate merger, it appears that the plaintiff ceased to be a shareholder of International; he had exchanged his holdings in the issuer, International, for cash and preferred and common stock of Arsenal Holdings Inc., which had become the 100% owner of International in the merger. Under the merger exchange the previously outstanding stock of International was cancelled, including plaintiff's shares. In this state of affairs, under the explicit language of Sec. 16(b), the right to bring a Sec. 16(b) suit on behalf of International, the issuer, was limited to either International, the original issuer, or Viacom, its new sole stockholder.
 
 
 45
 Thus the grounds of difference between the majority of the Court and this dissent are that the plaintiff no longer satisfies the plain statutory requirement--ownership of securities of the issuer.
 
 
 46
 Prior to the holding of the majority herein, it was axiomatic that an "owner of any security of the issuer" must continue to be a stockholder of the issuer throughout a Sec. 16(b) lawsuit. See Herrmann v. Steinberg, 812 F.2d 63, 67 n. 4 (2d Cir.1987) ("As a threshold matter ... plaintiffs must establish that they have been ... shareholders throughout this litigation."); Rothenberg v. United Brands Co., [1977-78] Fed.Sec.L.Rep. (CCH) p 96,045 at 91,691 (S.D.N.Y.) ("to continue to maintain a derivative action in the right of a corporation, plaintiff must have and maintain his standing throughout the litigation."), aff'd mem., 573 F.2d 1295 (2d Cir.1977); Staffin v. Greenberg, 509 F.Supp. 825, 840 (E.D.Pa.1981) ("the law requires that to maintain a derivative action under section 16(b) a plaintiff must have and maintain his standing as a shareholder at the commencement of the law suit and throughout the litigation."), aff'd on other grounds, 672 F.2d 1196 (3d Cir.1982) [Emphases supplied].
 
 
 47
 This Circuit as well as other circuits likewise have denied standing to sue to a Sec. 16(b) plaintiff who has ceased his stock ownership in the issuer regardless of whether he voluntarily sold his interest or because he was cashed out in a merger transaction. See Rothenberg v. United Brands Co., [1977-78] Fed.Sec.L.Rep. at 91,692 ("Here, we hold only that the requirement of Sec. 16(b) that the plaintiff be the owner of any security of the issuer is not satisfied where plaintiff loses his security owner status [by a statutory short form merger] and thus any proprietary interest in the issuer during the pendency of the action."); Portnoy v. Kawecki Berylco Indus., 607 F.2d 765, 767 (7th Cir.1979) ("When the plaintiff filed his Sec. 16(b) action, he was an owner of a security of the issuer (KBI). However, he lost that status five days later [when he was cashed out in a merger], and consequently, we are of the opinion that he lost the standing that he had as an owner of KBI stock.").
 
 
 48
 Those holdings follow traditional rulings in other contexts. Once a plaintiff loses his status as the owner of stock in the issuer, the terminated ownership does not present a case or controversy for the exercise of judicial power; the claims by a terminated owner are not justiciable any longer. "The rule in federal cases is that an actual controversy must be extant at all stages ..., not merely at the time the complaint was filed." Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). "[I]t is not enough that there may once have been a controversy at the time the suit was commenced if subsequent events have put an end to the controversy." Prudent Publishing Co. v. Myron Mfg. Corp., 722 F.Supp. 17, 22 (S.D.N.Y.1989). For other cases that become moot in the course of litigation, see Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1936); Stokes v. Village of Wurtsboro, 818 F.2d 4 (2d Cir.1987).
 
 
 49
 The majority holding that a former security holder of the issuer who has been divested of his securities by a merger transaction during the pendency of a suit should continue to be qualified to sue is predicated on a perceived necessity to effectuate the statutory policy behind Sec. 16(b). That policy has been described as "to protect the 'outside' stockholders against at least short-swing speculation by insiders with advance information." Smolowe v. Delendo Corp., 136 F.2d 231, 235 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). This result has been urged on the Court by the SEC in its amicus curiae brief and would implement a rule, lately proposed by the SEC but never adopted, designed to invest a former stockholder with continued authority to sue. The proposed rule was floated by the SEC in 1988, revised in 1989, as a proposed definition of the term "owner." See Ownership Reports and Trading by Officers, Directors and Principal Shareholders, 53 Fed.Reg. 49997 at 50013 (Dec. 13, 1988) ("To preserve Congress' intent, the proposed rules would provide standing to the former public shareholders whose equity securities have been acquired in a business combination or similar corporate transaction over which the individual shareholder has no control."); Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 54 Fed.Reg. 35667 at 35678 (Aug. 29, 1989) ("In response to comment received, the Commission reproposes a more limited definition. The revised proposed definition would extend standing only to former security holders who had filed suit before surrendering their securities.").[2]
 
 
 50
 The majority of this Court, as well as the SEC, point to the fact that plaintiff is now a shareholder of the parent corporation, Viacom, as further support for the plain extension of the scope of the statute, citing Blau v. Oppenheim, 250 F.Supp. 881, 884 (S.D.N.Y.1966). Reliance on Blau, however, is misplaced; it was factually, materially, different. In Blau, the issuer was merged out of existence, leading to the argument there made that if a successor was not permitted to sue under Sec. 16(b) no other party would be available to vindicate the policy of the statute. 250 F.Supp. at 886. In the present case, however, ownership of the issuer passed to Viacom, and Viacom, as the sole shareholder of the issuer, remained in position, if need be, to vindicate the purpose of the statute to pursue recovery of short-swing profits of an insider.
 
 
 51
 The infirmity of Blau is highlighted by a careful study of the facts there presented; these were:
 
 
 52
 Oppenheim was a director of Van Winkle, a listed company, who engaged in short swing transactions and was thus subject to Sec. 16(b) liability at the instance of security holders of Van Winkle. Plaintiff was not an owner of any security of Van Winkle at any time during its existence. Van Winkle was dissolved in its merger into M & T Chemicals, Inc., and all its assets were transferred to M & T in exchange for stock in American Can Co. Blau thereafter bought stock in American Can which, by then, owned 100% of the stock of M & T. Blau sued Oppenheim as a director of Van Winkle under Sec. 16(b) purporting to act as the "owner of any security of the issuer." The District Judge sustained the claim of Blau, a stockholder of American Can, against Oppenheim for short-swing transactions in stock of Van Winkle on a theory that Van Winkle's assets were now in M & T. However, American Can was the stockholder of M & T, not Blau, but this was passed over by the District Judge. To effectuate the conceived purpose of Sec. 16(b), only American Can should have been accorded status to sue, not Blau. The decision of the District Judge was never reviewed or analyzed by appeal. The public policy arguments pressed in Blau could only be made by ignoring the obligatory statutory requirement of stock ownership in the issuer. Blau granted standing to a non-owner, rather than to American Can itself, the sole holder of a security of the successor to Van Winkle.
 
 
 53
 Blau was mentioned by this Circuit and contrasted with Untermeyer v. Valhi, Inc., 665 F.Supp. 297 (S.D.N.Y.1987), aff'd mem., 841 F.2d 1117 (2d Cir.), aff'd on reh'g, 841 F.2d 25, 25 (2d Cir.) ("In Blau the issuer had been merged out of existence.... [and] the short swing-profits illegally gained would never have been recovered. In contrast, the issuer here, Sea-Land, survived the merger and remains a viable corporate entity. Because Sea-Land remains a viable corporate entity, it or its shareholder, CSX [the parent], can bring an action under section 16(b) to recover the short-swing profits allegedly gained.") (citations omitted), cert. denied, 488 U.S. 868, 109 S.Ct. 175, 102 L.Ed.2d 145 (1988). That comment is directly apposite here.
 
 
 54
 Two other circuit courts which have addressed this issue have refused to extend the statutory qualification to former shareholders of the issuer either when the issuer remains a viable corporate entity, see Portnoy, 607 F.2d at 769 (7th Cir.1979), or when the issuer was merged out of existence. See Lewis v. McAdam, 762 F.2d 800, 804 (9th Cir.1985) (per curiam) ("We hold that where a corporation is merged out of existence by the wholly owned subsidiary of another corporation, the parent corporation is not an 'issuer' within the meaning of section 16(b). Similarly, a shareholder of the parent corporation cannot be considered an 'owner of any security of the issuer' and accordingly lacks standing to bring a section 16(b) action.").
 
 
 55
 The SEC itself recognizes that qualifying former shareholders to sue, either judicially or by rule-making, is a marked departure from the pre-existing jurisprudence under Sec. 16(b). See 53 Fed.Reg. at 50013 ("Currently, the plaintiff is required to hold these shares [in the issuer] throughout the legal process.") (citing Portnoy, supra.); Id. ("Where the issuer continues to exist as a wholly-owned subsidiary, ... the courts have uniformly denied standing to former shareholders and shareholders of the parent.") (citing Untermeyer, infra; Lewis, supra; Portnoy, supra.).
 
 
 56
 It is a frequently stated principle of statutory construction that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. See National Railroad Passenger Corp. v. National Assoc. of Railroad Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." Botany Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 131-32, 73 L.Ed. 379 (1929). In short, the remedies created in Sec. 16(b) are the exclusive means to enforce the obligation imposed by the Act. Nat'l Railroad Passenger Corp., 414 U.S. at 458, 94 S.Ct. at 693.
 
 
 57
 Congress simply has not delegated to the courts the authority to qualify a "former" owner as an "owner of any security of the issuer." While I agree with the statement in Blau, 250 F.Supp. at 884, that "[t]he courts, particularly in our circuit, have consistently interpreted section 16(b) in 'the broadest possible' terms in order not to defeat its avowed objective," the case authorities have also taught that: "We have no constitutional authority to rewrite a statute simply because we may determine that it is susceptible of improvement." Lewis v. McAdam, 762 F.2d 800, 804 (9th Cir.1985) (citing Badaracco v. Commissioner, 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984)); see also, Badaracco, 464 U.S. at 401, 104 S.Ct. at 764-65 ("If the result contended for by petitioner is to be the rule, Congress must make it so in clear and unmistakable language."); TVA v. Hill, 437 U.S. 153, 194, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978) ("Our individual appraisal of the wisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting the statute."); Blau v. Lehman, 368 U.S. 403, 413, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962) ("Congress is the proper agency to change an interpretation of the [1934] Act unbroken since its passage, if the change is to be made."); Untermeyer v. Valhi, 665 F.Supp. 297, 300 (S.D.N.Y.1987) ("the statutory language may not be strained or distorted to add to the 'prophylactic' effect Congress itself clearly prescribed in Sec. 16(b)"), aff'd mem., 841 F.2d 1117 (2d Cir.), aff'd on reh'g, 841 F.2d 25 (2d Cir.), cert. denied, 488 U.S. 868, 109 S.Ct. 175, 102 L.Ed.2d 145 (1988).
 
 
 58
 The statute unambiguously states that "the owner of any security of the issuer" may sue to recover short-swing profits that are recoverable by the issuer under Sec. 16(b). There is simply no indication in any of the legislative history of Sec. 16(b) that the plain meaning of the words "owner of any security of the issuer" was meant to include or even could include one who is no longer the owner of any security of the issuer. Nor is there anything in the legislative history from which to believe "that the plain meaning of the statutory language is inadequate to effect the congressional purpose of providing an enforcement mechanism against insider trading. That a merger may result in a corporation succeeding to an action formerly held by an individual is a consequence dictated by the statute." Lewis, 762 F.2d at 804. Certainly, Congress has had ample opportunity to amend Sec. 16(b) had it so desired.[3]
 
 
 59
 Further, the narrow private cause of action granted by Sec. 16(b) militates strongly against our attributing to Congress a willingness to allow a more expansive enforcement of the statute. The remedy encompasses not former stockholders of the issuer but only stockholders. As did the Seventh Circuit, we should "reject the plaintiff's invitation to draft 'judicial legislation' to grant him standing." Portnoy, 607 F.2d at 768.
 
 
 60
 Accordingly, I would affirm the order and judgment appealed from.
 
 
 
 *
 Hon. Milton Pollack, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Excluded from the conversion were dissenting shares and shares held by Viacom, by International, or by a subsidiary of Viacom
 
 
 [2]
 Certainly, the proposed rules do not govern this case, see Mayer v. Chesapeake Ins. Co., 877 F.2d 1154, 1162 (2d Cir.1989) ("[t]hough the Commission has recently proposed a new rule ... which would extend Sec. 16(b) liability ..., thereby changing existing law, ... the proposed rule does not govern the present case."), cert. denied, --- U.S. ----, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990), although the majority urges that they be given persuasive weight. See Basic Inc. v. Levinson, 485 U.S. 224, 239 n. 16, 108 S.Ct. 978, 987 n. 16, 99 L.Ed.2d 194 (1988) ("The SEC's insights [regarding the materiality standard under Rule 10b-5] are helpful, and we accord them due deference."). In Piper v. Chris-Craft Indus., Inc., 430 U.S. 1, 41 n. 27, 97 S.Ct. 926, 949 n. 27, 51 L.Ed.2d 124 (1977), the Supreme Court observed, however, that "[the SEC's] presumed 'expertise' in the securities-law field is of limited value when the narrow legal issue is one peculiarly reserved for judicial resolution, namely whether a cause of action should be implied by judicial interpretation in favor of a particular class of litigants."
 
 
 [3]
 Several times in the past decade or so Congress has legislated amendments to the 1934 Act. See e.g., Insider Trading and Securities Fraud Enforcement Act of 1988, Pub.L. No. 100-704, 102 Stat. 4677 (1988); Shareholder Communications Act of 1985, Pub.L. No. 99-222, 99 Stat. 1737 (1985); Insider Trading Sanctions Act of 1984, Pub.L. No. 98-376, 98 Stat. 1264 (1984); Foreign Corrupt Practices Act of 1977, Pub.L. No. 95-213, 91 Stat. 1494 (1977); Domestic & Foreign Investment Improved Disclosure Act of 1977, Pub.L. No. 95-213, 91 Stat. 1498 (1977)