CORTEZ BYRD, et anno., Plaintiffs,

v.

CORPORACION FORESTAL Y IN-DUSTRIAL DE OLANCHO, S.A. (Corfino), et al., Defendants.

No. 11 MISC. 0443.

United States District Court,
S.D. New York.

Sept. 30, 2013.

Charles H. Camp, Esq., Law Offices of Charles H. Camp, Washington, D.C., for Plaintiff.

Mark Stephen Sullivan, Esq., Juan C. Basombrio, Esq., Dorsey & Whitney LLP, New York, NY, for the Republic of Honduras.

### MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

In 2003, Plaintiffs Cortez Byrd and Simmons Lumber Company, S.A. obtained a $188,301,528.87 judgment against Defendant Corporacion Forestal y Industrial de Olancho, S.A. ("Corfino"), an "agent or instrumentality" of the Republic of Honduras, as that term is defined in section 1603 of the Foreign Sovereign Immunities Act ("FSIA"). *See Byrd v. Corporacion Forestal y Industrial de Oloncho, S.A.,* No. 3:97–cv–00415–WS, S.D.Miss., Docket No. 127. In 2011, Plaintiffs registered their Southern District of Mississippi judgment in the Southern District of New York. By that time, with interest, the judgment totaled $205,880,749.18.

In January 2013, before attaching any assets in this district, Plaintiffs applied for a declaration that they satisfied the FSIA section 1610(c) notice provisions. By Or-

der dated January 23, 2013 (the "January Order"), this Court, sitting as Part 1, concluded that Plaintiffs met the statutory requirements and found that the Republic of Honduras was the successor in interest of Corfino. The January Order enabled Plaintiffs to seek execution of their judgment against Honduras directly. Honduras did not appear at the hearing on Plaintiffs' application even though they had served it on the Honduran Attorney General.

On February 22, 2013, Honduras filed a notice of appeal from the January Order. Thereafter, on March 15, 2013, Honduras sought relief from the January Order pursuant to Rule 60(b), as part of an application to this Court seeking vacatur of a restraining notice Plaintiffs had since obtained to execute on their judgment. Because Honduras filed its Rule 60(b) motion more than 28 days after entry of the January Order, the February 22, 2013 notice of appeal stripped this Court of jurisdiction to decide the motion. *See* Fed. R.App. P. 4(a)(4)(A)(vi).

But pursuant to Fed.R.Civ.P. 62.1, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." For the following reasons, this Court indicates that if jurisdiction were restored, it would reconsider and vacate the January Order. In view of this indicative ruling, a related motion for reconsideration filed by Plaintiffs on April 1, 2013 is denied.

I. *Background*

In 1997, Plaintiffs filed suit against Corfino in the Southern District of Mississippi alleging various breach of contract and tort claims related to Plaintiffs' ouster as managers of a multimillion dollar project to exploit lumber resources in Honduras' Olancho region. Corfino, a public corporation created under Honduran law by Cohdefor,[1] the Honduran Forest Ministry, initiated the project. Corfino moved to dismiss the Mississippi action on sovereign immunity grounds. While Corfino was an "agent or instrumentality" of Honduras under FSIA § 1603(b), the district court applied the "commercial activities" exception and concluded that Corfino was not entitled to sovereign immunity. *See* 28 U.S.C. § 1605(a)(2) (no foreign sovereign immunity for actions based on commercial activities having a direct effect in the United States). Corfino appealed and the Fifth Circuit affirmed. *See Byrd v. Corporacion Forestal y Industrial De Oloncho, S.A.,* 182 F.3d 380 (5th Cir.1999). Thereafter, Corfino ceased defending the lawsuit and the judgment was entered after a hearing on the merits. In 2003, Corfino was dissolved. Over the following decade, Plaintiffs endeavored to collect on their judgment without success. In 2011, they registered their judgment in the Southern District of New York but took no further action until January 2013.

At that time, Plaintiffs sought an order from this Court finding compliance with the notice provisions of section 1610(c) of the FSIA. Under section 1610(c), "[n]o attachment or execution [of the property of a foreign state or its instrumentality] ... shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this

---

1. Cohdefor is a syllabic abbreviation of Corporation Hondureñas de Desarrollo Forestal.

chapter." Section 1608(e) sets forth the procedures for serving a default judgment on a foreign state or its instrumentality. Plaintiffs sought a "narrow order" finding only that a reasonable period of time had elapsed after entry of the judgment against Corfino in 2003 and that notice under section 1608(e) was not required because the judgment was not a default. (Pls.' Br. in Supp. of Mot. for 1610(c) Order, dated 12/29/12 ("Pls.' Br.") at 3.) The January Order neither authorized the attachment of any specific property nor made any findings whether such property would be immune from attachment or execution under sections 1610(a) or (b) of the FSIA.

Plaintiffs also sought a judicial finding that Honduras was Corfino's successor in interest. In their application, Plaintiffs noted that Corfino was created under Honduran law, that Cohdefor was required by law to hold 51% of its stock at all times, that Cohdefor in fact held no less than 98% of Corfino's stock during the span of Corfino's existence, that Honduras treated the debts of Corfino as debts of the state, and that Honduras' Secretariat of Finances assumed Corfino's debts upon its liquidation. (Pls. Br. at 6–9.) Plaintiffs served their motion on Honduras' Attorney General, but Honduras did not appear.

On March 15, 2013, Honduras was set to close on a $500,000,000 bond offering with Deutsche Bank. But the transaction was threatened when Plaintiffs—using the January Order—obtained a restraining notice against Deutsche Bank pursuant to N.Y. C.P.L.R. § 5222(b). Deutsche Bank informed Honduras it would not proceed unless the restraining notice was lifted. Honduras sought emergency relief from this Court seeking vacatur of the January

Order and the restraining notice. While this Court deferred ruling on Honduras' request to vacate the January Order, it vacated the restraining notice on the ground that no Honduran property was in Deutsche Bank's possession at the time the notice was served. *See* N.Y. C.P.L.R. § 5222(b). On April 1, 2013, Plaintiffs moved for reconsideration, claiming they had new evidence that Deutsche Bank was in the possession of Honduran property at the time that restraining notice was served.[2]

## II. *Honduras' Motion to Vacate the January 23 Order*

Under Rule 60(b), this Court has discretion to relieve a party from a final order for enumerated reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence [ ]; (3) fraud [ ]; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged [ ]; or (6) any other reason that justifies relief." Fed R. Civ. P. 60(b). Honduras seeks relief under Rule 60(b)(1) (inadvertence) because Honduras was not properly noticed; under Rule 60(b)(4) on the ground that the judgment is void; and under Rule 60(b)(6) (the catch-all provision). "Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell ex rel. Viacom, Inc. v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990). This Court turns first to Honduras' argument under Rule 60(b)(4).

### A. *Relief Under Rule 60(b)(4).*

■ Under Rule 60(b)(4), a judgment is void "if the Court that rendered it lacked jurisdiction of the subject matter, or of the

---

**2.** In their motion, Plaintiffs also sought a determination regarding the validity of a second restraining notice served on Deutsche Bank.

parties, or if it acted in a manner inconsistent with due process of law." *City of N.Y. v. Mickalis Pawn Shop,* 645 F.3d 114, 138 (2d Cir.2011). Honduras argues that Rule 60(b)(4) applies because this Court lacked subject matter jurisdiction under the FSIA to issue the January Order.

██ 'The FSIA "contains a comprehensive set of legal standards governing claims to immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities." *Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 488, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). "[I]f none of the exceptions to sovereign immunity set forth in the Act applies, the District Court lacks both statutory subject matter jurisdiction and personal jurisdiction." *Verlinden,* 461 U.S. at 485 n. 5, 103 S.Ct. 1962. As such, the FSIA provides "the sole basis for obtaining jurisdiction over a foreign state." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). Generally, foreign states and their "agents and instrumentalities," as defined in section 1603(b), are immune from suit in United States courts. *See* 28 U.S.C. § 1604; *Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi,* 215 F.3d 247, 251 (2d Cir.2000). However, the FSIA outlines certain exceptions to foreign sovereign immunity, including where the action is based on commercial activity having a direct effect in the United States. 28 U.S.C. § 1605(a)(2). In *Byrd,* the Fifth Circuit found that Corfino was an "agent or instrumentality" of Honduras, but that it was not immune from suit under the "commercial activities" exception. 182 F.3d at 388, 391. Thus, there is no question that the court had subject matter jurisdiction over Corfino in the Mississippi action.

██ Honduras argues that this Court erred in failing to make a *sua sponte* subject matter jurisdiction determination before granting the January Order because the "commercial activities" exception that conferred subject matter jurisdiction in the Mississippi action related to the actions of Corfino, not Honduras itself. But "where subject matter jurisdiction under the FSIA exists to decide a case, jurisdiction continues long enough to allow proceedings in aid of any money judgment that is rendered in the case," including the identification of any "alter-ego" whose assets could satisfy the judgment. *First City, Tex. Houston, N.A. v. Rafidain Bank,* 281 F.3d 48, 54 (2d Cir.2002). Here, the Fifth Circuit explicitly held that there was subject matter over the Mississippi action. *Byrd,* 182 F.3d at 391 ("the district court correctly asserted subject matter jurisdiction over the appellants under ... the commercial activity exception to the FSIA."). At the January hearing, this Court found only that a reasonable period of time had elapsed since the judgment had issued, that any required notice had been satisfied, and that Honduras was Corfino's successor in interest. As such, it was a "proceeding in aid of a[ ] money judgment" over which this Court had subject matter jurisdiction. *First City,* 281 F.3d at 54.

In contending that this Court was required to determine whether Honduras itself is subject to any of the exceptions to sovereign immunity under section 1605, Honduras "mistakenly conflates jurisdiction and execution immunity" which "operate independently." *Walters v. Indus. & Commercial Bank of China, Ltd.,* 651 F.3d 280, 295, 288 (2d Cir.2011). In this proceeding, Plaintiffs do not attempt to join Honduras as a party, rather, they seek to satisfy the prerequisites to attachment of Honduran assets in satisfaction of their default judgment against Corfino. *See Walters,* 651 F.3d at 292.

Nevertheless, the existence of subject matter jurisdiction over this proceeding does not empower Plaintiffs to attach Honduran assets without establishing that the assets are not subject to execution immunity under sections 1610(a) or (b). *See Walters,* 651 F.3d at 295. But this Court's January Order was not a writ of execution or attachment. "A 1610(c) order ... does not authorize the attachment or execution of particular property .... Any court, whether this or another, would be required to ... review[ ] the jurisdictional provisions of § 1610(a, b), as well as any other immunities that might apply." *Agudas Chasidei Chabad v. Russian Fed'n,* 798 F.Supp.2d 260, 270–71 (D.D.C.2011). And because "the execution immunity afforded sovereign property is broader than the jurisdictional immunity afforded the sovereign itself," Honduras would be entitled to expansive immunity against attachment of those assets. *Walters,* 651 F.3d at 289. As such, there was no affront to Honduras' sovereign immunity when this Court exercised subject matter jurisdiction over the instant proceeding.

## B. *Relief Under Rule 60(b)(6)*

■ Rule 60(b)(6) authorizes a district court to grant relief to a moving party for "any other reason that justifies relief." It is a "grand reservoir of equitable power to do justice in a particular case." *Stevens v. Miller,* 676 F.3d 62, 67 (2d Cir.2012) (internal quotations omitted). Rule 60(b)(6) relief is warranted "if extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant." *ISC Holding AG v. Nobel Biocare Fin. AG,* 688 F.3d 98, 109 (2d Cir.2012). This is one of those rare occasions where Rule 60(b)(6) relief is warranted, with respect to the January Order's determination that Honduras was Corfino's successor in interest and that Plain-

tiffs fulfilled their notice obligations under section 1610(c).

## *Honduras as Successor in Interest to Corfino*

■ At the January hearing, Plaintiffs represented that Corfino was created under Honduran law, that Cohdefor was required by law to hold 51% of its stock at all times, that Cohdefor in fact held 98% of its stock during the span of Corfino's existence, that Honduras treated the debts of Corfino as debts of the state, and that Honduras' Secretariat of Finances assumed Corfino's debts on its liquidation. (Pls. Br. at 6–9.) While these facts would suffice to establish successor liability in the mine-run case, a more rigorous showing is required under the FSIA.

■ Under the FSIA, agencies and instrumentalities of a foreign nation "established as juridical entities distinct and independent from their sovereign should normally be treated as such." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 627, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (*"Bancec "*). In addition to *Bancec's* "presumption of separateness," *see NML Capital, Ltd. v. Banco Central de la Republica Argentina,* 652 F.3d 172, 181 (2d Cir.2011), the Second Circuit has "recognized a further presumption that assets of a foreign government instrumentality [can]not be executed upon to satisfy a judgment against a parent foreign government, which can be overcome only if the party seeking attachment carrie[s] its burden of demonstrating that the instrumentality's separate juridical status [i]s not entitled to recognition." *Walters,* 651 F.3d at 298 (internal quotations and citations omitted). Thus, Plaintiffs had the burden of proving that Corfino "was not entitled to separate recognition." *De Letelier v. Republic of Chile,* 748 F.2d 790, 795 (2d Cir.1984).

Under *Bancec*, "[i]t is not enough to show that various government entities or officials represent a majority of the shareholders or constitute a majority of the board of directors of the applicable agency or instrumentality; in other words, mere involvement by the state in the affairs of an agency or instrumentality does not answer the question whether the agency or instrumentality is controlled by the state for purposes of FSIA." *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 440 (D.C.Cir.1990). Rather, Plaintiffs must show either that "the corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created [or] that recognition of the instrumentality as an entity apart from the state would work fraud or injustice." *Transamerica Leasing, Inc. v. La Republica de Venezuela,* 200 F.3d 843, 848 (D.C.Cir.2000) (internal citations and quotations omitted). "[B]oth *Bancec* and the FSIA legislative history caution against too easily overcoming the presumption of separateness." *De Letelier,* 748 F.2d at 795.

In conducting the "extensive control" test, courts examine whether the sovereign's level of involvement in "day to day" operations exceeds the normal supervisory control exercised by a corporate parent over a subsidiary, or whether the sovereign and the instrumentality were "operated as a single enterprise." *See Transamerica,* 200 F.3d at 848–49. In *Bancec,* the Supreme Court described the features of a typical government instrumentality:

> A typical government instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law. The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued. Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances. The instrumentality is run as a distinct economic enterprise; often it is not subject to the same budgetary and personnel requirements with which government agencies must comply.

462 U.S. at 624, 103 S.Ct. 2591. The Supreme Court further explained that these features "prompt governments in developing countries to establish separate juridical entities as the vehicles through which to obtain the financial resources needed to make large-scale national investments" because they "permit government instrumentalities to manage their operations on an enterprise basis while granting them a greater degree of flexibility and independence from close political control than is generally enjoyed by government agencies." *Bancec,* 462 U.S. at 624–25, 103 S.Ct. 2591.

Corfino was incorporated on August 23, 1977 pursuant to a governmental decree to carry out "the industrial and commercial exploitation ... of forest resources located in the reserve zone of Olancho." (Supplemental Decl. of Charles Camp, dated 5/3/13 Ex. 3 ("Camp Decl."); Decl. of Juan Arnaldo Hernandez Espinoza, dated 4/10/13 ("Espinoza Decl.") ¶ 17.) Aside from its enabling statute, Corfino was subject to the Commercial Code of Honduras, which governs private business entities. (Camp Decl. Ex. 3.) Article 90 of the Honduran Commercial Code provides that corporations are liable for their own finances and debts and that investors are not liable beyond the amount of their individual investment. (Espinoza Decl. ¶ 19; Decl. of Martha Guadalupe Teruel, dated 4/10/13 ("Teruel Decl.") ¶ 2.) Corfino had the ability to sue and be sued, and to acquire and

dispose of property. (Espinoza Decl. ¶¶ 19–20.) Neither Cohdefor nor Honduras itself had the ability to appoint or remove Corfino employees and they were not considered public employees under Honduran law. (Espinoza Decl. ¶¶ 20–21.)

As required by its enabling statute,[3] Corfino's majority shareholder was Cohdefor, a "semi-autonomous institution, with its own legal personality and equity." (Camp Decl. Ex. 2.) Cohdefor was created in 1974 by a decree to "optimiz[e] the exploitation of the county's forest resources." (Camp Decl. Ex. 2.) As the "executive organ of the state forestry policy," Cohdefor was authorized to carry out "the industrialization of forestry resources" through "companies of mixed or private capital," so long as Cohdefor or an analogous state entity held a controlling interest in those companies. (Espinoza Decl. ¶¶ 10–11.)

On June 28, 2003, Corfino's shareholders agreed unanimously to dissolve the company and three Cohdefor employees were appointed to oversee its liquidation. (Teruel Decl. ¶ 10.) Corfino is still winding up its affairs. (Teruel Decl. ¶ 10.) In 2007, ICF,[4] a new governmental entity, took over Cohdefor's functions.[5] (Teruel Decl. ¶ 3.) In February 2008, Honduras enacted a statute transferring Cohdefor's assets "and any programs and projects related to Forestry, Protected Areas, and Wildlife" to ICF and providing that "[a]ny liabilities of [Cohdefor] shall be assumed by the Ministry of Finance." (Camp Decl. Ex. 4.)

Because ICF obtained Corfino's assets while it was undergoing dissolution, Honduras asserts that ICF's role is limited to monitoring Corfino's liquidation activities. (Teruel Decl. ¶ 3.)

This Court concludes that Plaintiffs have failed to overcome the presumption of separateness with respect to Corfino and Cohdefor, as well as to Corfino and the Republic itself. The record on the Rule 60(b) motion reveals that Corfino shared many features of the "typical government instrumentality" entitled to the *Bancec* presumption: It was "established as a separate juridical entity" governed in large part by the Honduran Commercial Code, with "powers to hold and sell property and to sue and be sued." *See Bancec*, 462 U.S. at 624, 103 S.Ct. 2591. Its mission was to carry out a "large-scale national investment" on "an enterprise basis" using foreign capital and technology. *See Bancec*, 462 U.S. at 624, 103 S.Ct. 2591. Plaintiffs have not presented evidence that Cohdefor, let alone the Republic itself, exercised excessive control over Corfino's day to day operations or that Corfino "operated as a single enterprise" with Honduras or Cohdefor. *Transamerica*, 200 F.3d at 848. Nor have Plaintiffs presented evidence to refute the Republic's contentions that Corfino controlled its own finances and hired and fired its employees.

Instead, Plaintiffs offer conclusory arguments that blur the distinctions between these entities and conflate the Fifth Cir-

---

**3.** Specifically, Article 3 of Decree No. 465 provides that "[t]he share capital [of Corfino] shall be represented by two classes of shares: class A shares, which at no time may represent less than 51% of the total shares, shall always be registered and owned by the Government of Honduras, whether exercised directly or through [Cohdefor], the National Investment Corporation, or any other entity—present or future—under state control." (Camp. Decl. Ex. 3.)

**4.** The full translated name of ICF is the National Institute of Preservation and Development of Forests, Protected Areas and Wildlife.

**5.** At that time, Cohdefor was known as ACF–Cohdefor. "ACF" stands for Administracion Forestal del Estado.

cuit's finding that Corfino was amenable to suit under the commercial activities exception with a finding that Corfino is the alter ego of Honduras. *Bancec* cautions that "[f]reely ignoring the separate status of government instrumentalities would result in substantial uncertainty" and that "[d]ue respect" should be given to the "efforts of sovereign nations to structure their governmental activities in a manner deemed necessary to promote economic development and efficient administration." *Bancec*, 462 U.S. at 626, 103 S.Ct. 2591; *cf. Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n*, 361 F.3d 676, 685–86 (2d Cir.2004) ("[H]ad either the government or the Russian Federation wanted to shield the latter entity … either could have designated a publicly owned state corporation or instrumentality as the entity to contract with Noga.").

Further, Plaintiffs have failed to demonstrate that "recognition of the instrumentality as an entity apart from the state would work fraud or injustice." *Transamerica*, 200 F.3d at 848: *Bancec*, 462 U.S. at 629–30, 103 S.Ct. 2591. To qualify for this exception, Plaintiffs must show that the Republic sought to avoid its obligations by engaging in "abuses of corporate form." *De Letelier*, 748 F.2d at 794. There is no evidence that Honduras abused the corporate form, or that it used Corfino's separate status to shield itself from liability. *See, e.g., LNC Invs., Inc. v. Republic of Nicaragua*, 115 F.Supp.2d 358, 366 (S.D.N.Y.2000) (finding "no indication that any 'fraud or 'injustice' will result from insulating the Central Bank's property from attachment in aid of execution of the judgment against Nicaragua."); *Katzir's Floor & Home Design, Inc. v. M–MLS.com.*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injus-

tice that results only when corporate separateness is illusory.").

Plaintiffs also argue that Honduras affirmatively assumed the liabilities of Cohdefor and thus a *Bancec* analysis is not required. But the Honduran statute only provided that Honduras assumed the debts of Cohdefor, not Corfino, and Plaintiffs have not shown that Cohdefor was responsible for Corfino's liabilities beyond Cohdefor's equity interest as a shareholder. Citing reports from Honduran Banks and the Honduran Secretariat of Finances, Plaintiffs assert that Honduras has treated the debts and assets of Corfino as the debts and assets of Honduras itself. But Plaintiffs do not support their *ipse dixit* with documents or affidavits. Instead, they rely on the averments of counsel. Thus, even if successor liability were an inquiry separate and apart from *Bancec*, Plaintiffs have failed to demonstrate any affirmative assumption of liability by the Republic. *Compare Walters*, 651 F.3d at 298, *and De Letelier*, 748 F.2d at 795 (applying *Bancec* to determine whether assets of foreign states' instrumentalities could be used. to satisfy judgment against foreign states) *with Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 439 (6th Cir.2002) (finding that *Bancec* "did not consider the type of successorship question presented in this case" and applying Romanian law).

### Satisfaction of Section 1610(c) Notice Provisions

 Honduras also seeks relief from the January Order's determination that 1610(c)'s notice provisions were satisfied. Before the property of a foreign sovereign may be attached, a court must determine that "a reasonable period of time has elapsed following the entry of judgment" and that "any notice required under section 1608(e)" has been given. Section 1608(e) provides that "[n]o judgment by

default shall be entered by a court of the United States ... against a foreign state ... or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." The section also requires that notice of a default judgment be provided in accordance with the service procedures for a summons and complaint, as outlined in section 1608. Section 1608(a) and (b) provide a hierarchy of methods to effectuate service of a summons and complaint on a foreign government or its instrumentality. Thus, a plaintiff may resort to a subsequent method of service only after the prior method has failed. *See United States v. Barry Fischer Law Firm, LLC,* No. 10 Civ. 7997(TPG), 2011 WL 31545, at *5 (S.D.N.Y. Jan. 5, 2011) ("The method i[n] (a)(2) may be used only if the method in (a)(1) is not available, and so on through (a)(3) and (a)(4).").

At the January hearing, this Court found that ten years constituted a reasonable period of time following the entry of judgment. This Court also determined that notice pursuant to section 1608(e) was not required because Corfino appeared in the Mississippi action and argued sovereign immunity before the Fifth Circuit. But with the benefit of Honduras' briefing, this Court acknowledges that its ruling was in error. Even where a foreign state or its instrumentality initially appears in an action, judgment creditors must provide notice of a subsequent default judgment in accordance with section 1608(e): "Where, as here, [a] foreign state or agency is not participating or has withdrawn from the litigation, the entry of a default judgment will not, in and of itself, give sufficient warning that the defendant's interests and assets are exposed. Accordingly, § 1610(c) requires that notice required under section 1608(e) be given." *Agudas,* 798 F.Supp.2d at 267.

Plaintiffs argue that the judgment against Corfino was not a default judgment because it was "issued on the basis of the merits of Plaintiffs' claims following an evidentiary proceeding." (Pls.' Opp'n to 60(b) Mot. at 18.) Thus, Plaintiffs contend they were permitted to serve the judgment in accord with the Federal Rules of Civil Procedure as opposed to the FSIA. But section 1610(c) *requires* a court to find an evidentiary basis for the claims before issuing a default judgment against a foreign state or its instrumentality. *See* 28 U.S.C. § 1608(e); *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 242–43 (2d Cir.1994) (discussing evidentiary standard to establish right to relief under section 1608(e)); *Oveissi v. Islamic Republic of Iran,* 573 F.3d 835, 838 (D.C.Cir.2009) ("The FSIA, however, does not automatically entitle a plaintiff to judgment when a foreign state defaults, and instead requires a court to satisfy itself that the plaintiff has established a right to relief.") (internal citations omitted). As such, Plaintiffs' argument that evidentiary findings transformed a default judgment into a final judgment immune from FSIA notice requirements lacks merit. Plaintiffs were required to serve the default judgment on Corfino in accordance with the provisions of section 1608(e). Service of the judgment and a certified Spanish translation through Honduran lawyers does not satisfy the notice provisions of the FSIA. (*See* Camp. Decl. ¶ 6.) Further, Plaintiffs should have provided the Republic itself with notice of the judgment as required by section 1608(e). "Before permitting enforcement of a FSIA judgment, a court must ensure that all foreign entities involved receive notice of the exposure of their property and other interests to attachment and execution." *Agudas,* 798 F.Supp.2d at 267. In view of *Bancec* analysis, Plaintiffs are not entitled to conflate service on Corfino with service on the Republic.

## C. *Relief Under Rule 60(b)(1)*

Finally, Honduras argues that the January Order should be vacated pursuant to Rule 60(b)(1) because Plaintiffs did not properly serve their motion for a 1610(c) order on the Republic. As this Court has determined that the January Order should be vacated after giving Honduras an opportunity to be heard, this Court declines to reach the issue of whether Plaintiffs' service of its motion for a 1610(c) order was improper.

## III. *Plaintiffs' Motion for Reconsideration of Vacatur of the Restraining Notice*

Because this Court would vacate the January Order if the Second Circuit restored jurisdiction, it also denies as moot Plaintiffs' motion for reconsideration of the vacatur of the restraining notice against Deutsche Bank.

## IV. *Conclusion*

For the foregoing reasons, this Court would grant Honduras' motion to vacate the January Order if jurisdiction were restored, and Plaintiffs' motion to reconsider this Court's vacatur of the Deutsche Bank restraining notice is denied. The Clerk of the Court is directed to terminate all pending motions.

SO ORDERED.