**Charles M. CROONS, Plaintiff,**

v.

**NEW YORK STATE OFFICE OF MENTAL HEALTH, Central New York Psychiatric Center; Donald Sawyer, Executive Director; Debbie Collver; Sharon M. Schoen; John Does; Jane Does; Patricia L. Bardo; and Corey Conley, Defendants.**

No. 6:10–CV–1277.

United States District Court, N.D. New York.

Signed Jan. 14, 2015.

AJ Bosman, Esq., Daniel W. Flynn, Esq.,
Bosman Law Office, Rome, NY, for Plaintiff.

Eric T. Schneiderman, Attorney General for the State of New York, Michael G. McCartin, Esq., Ass't Attorney General, Albany, NY, for Defendants.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

In October 2010, plaintiff Charles M. Croons ("Croons" or "plaintiff") filed this discrimination lawsuit against the New York State Office of Mental Health's Central New York Psychiatric Center ("CNYPC") and several of its current and former employees. Plaintiff's operative complaint enumerated fourteen causes of action for alleged violations of federal and state law. Following extensive discovery, defendants moved pursuant to Federal Rule of Civil Procedure ("Rule") 56 seeking summary judgment on all of plaintiffs various claims. That motion was fully briefed and oral argument was heard on September 27, 2013 in Utica, New York.

On May 12, 2014, a Memorandum–Decision and Order (the "May 12 Decision" or the "Decision") granted defendants' motion for summary judgment in its entirety. Croons v. N.Y.S. Office of Mental Health, 18 F.Supp.3d 193 (N.D.N.Y.2014). Croons now moves pursuant to Rule 59(e) and Rule 60(b) for "relief from the court's summary judgment order" because he purports to have identified a number of errors in that Decision. Pl.'s Mem., ECF No. 57–1, 2.[1] The motion has been fully briefed and will be considered on its submissions without oral argument.

## II. DISCUSSION

Croons argues vacatur of the May 12 Decision is warranted because: (1) it misapplied the legal standard governing a motion for summary judgment; (2) defendants committed discovery violations; and (3) plaintiff has come into possession of newly discovered evidence. Pl.'s Mem. 2.

1. Pagination corresponds to that assigned by CM/ECF.

■ A Rule 59(e) motion requires a plaintiff to satisfy "the heavy burden of demonstrating 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Hollander v. Bd. of Regents, 524 Fed.Appx. 727, 729 (2d Cir. 2013) (summary order) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.1992)), cert. denied, —— U.S. ——, 134 S.Ct. 197, 187 L.Ed.2d 45 (2013).

■ In a similar vein, "[m]otions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." Cortez Byrd v. Corporacion Forestal y Indus. de Olancho, S.A., 974 F.Supp.2d 264, 267 (S.D.N.Y.2013) (quoting Mendell ex rel. Viacom, Inc. v. Gollust, 909 F.2d 724, 731 (2d Cir.1990)).

Specifically, Rule 60(b) empowers a district court with discretion to relieve a party from a final judgment, order, or proceeding for six, enumerated reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) for "any other reason that justifies relief." FED.R.CIV.P. 60(b)(1)-(6).

Because these six provisions are "intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts...., motions for relief from judgment under Rule 60(b) are generally disfavored in the Second Circuit." Bernstein v. Appellate Div. First Dep't Disciplinary Comm., No. 07 Civ. 1196(SAS), 2010 WL 5129069, at *1 (S.D.N.Y. Dec. 15, 2010) (citations and explanatory parentheticals omitted).

### 1. Summary Judgment[2]

■ Croons first argues that the May 12 Decision "failed to interpret the evidence in

2. Croons fails to specify whether this argument is grounded in Rule 59(e) or one of the various provisions of Rule 60(b), but given plaintiffs assertion that the May 12 Decision committed a

light [sic] most favorable to the plaintiff" because "it credited [ ] defendants' reply submissions which asserted there was a change in policy prohibiting plaintiff from working light duty in the supervisor's office." Pl.'s Mem. 3.

At the outset, an appreciation of the relevance (or irrelevance) of the claimed policy change about which Croons now complains turns on a working understanding of one of plaintiffs theories of discrimination. So while the May 12 Decision recounts the relevant factual background in this matter in some detail, *see Croons*, 18 F.Supp.3d at 196–99, and while the parties' familiarity with that background is presumed for purposes of this motion, the recitation of a few pertinent details is necessary to properly disabuse plaintiff of his mistaken understanding of the Decision's analysis.

Croons, an African–American male employed as a Security Hospital Treatment Assistant ("SHTA") at CNYPC, suffered an on-duty injury on June 1, 2007 and was promptly placed on administrative leave. *Croons*, 18 F.Supp.3d at 196. Shortly thereafter, plaintiff was medically cleared for "light duty" and allegedly made repeated requests for such an assignment. *Id.* at 196–97. However, supervisory personnel at CNYPC never furnished plaintiff with light duty and, on July 13, 2008, terminated him pursuant to New York Civil Service Law § 71. *Id.* at 197–98. Later, after plaintiff obtained a full medical clearance, defendants were slow to reinstate him to his former position and this lawsuit was commenced in the interim. *Id.* at 198–99.

There is no question that Croons's injury, his prolonged administrative leave and eventual termination, and defendants' apparent recalcitrance to reinstate him represented an unfortunate series of events. Of course, these facts alone were not actionable, since "it is hornbook law that the mere fact that something bad happened to a member of a particular racial group does not, without more, establish that it happened *because* the person is a member of that racial group." *Williams v. Calderoni*, No. 11 Civ. 3020(CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) (emphasis in original) (citation and explanatory parenthetical omitted).

But Croons insisted he could do more than simply identified perceived injustice in defendants' actions and omissions—he offered theories of discriminatory conduct that could give rise to civil liability at each juncture of this employment saga. With respect to defendants' failure to assign him light duty prior to his termination, plaintiff relied on a theory of disparate treatment and claimed to have identified several "white" employees who were afforded the assignments that he, an African–American, had been denied. Obviously, if plaintiff could identify any record evidence to support a finding that a similarly situated employee outside his own protected class had been given light duty during the time period he was eligible to receive it yet nevertheless denied it, then he would unquestionably have carried his virtually de minimis burden of establishing a prima facie case of disparate treatment on this particular theory of discrimination.

Croons purported to have identified three white SHTAs for purposes of this comparator analysis—Deb Vrooman, Danny Valieki, and Ray Mellor. Plaintiff asserted that each of these individuals had worked light duty at CNYPC in some capacity at some point in the past. In particular, plaintiff claimed these individuals had each been assigned to complete various clerical and administrative tasks in the Security Supervisor's Office. However, as the May 12 Decision noted, plaintiff had not identified "any evidence in the record to support a claim" that either Ms. Vrooman, a *senior* SHTA, or Mr. Valieki, a man about whom no evidence at all was identified, were "similarly situated in all material respects" to plaintiff. *Croons*, 18 F.Supp.3d at 203–04; *see also, e.g., Dellaporte v. City Univ. of New York*, 998 F.Supp.2d 214, 230 (S.D.N.Y.2014) (noting that although the determination of whether two employees are "similarly situated" is "normally a question of fact for the jury," a court may nevertheless properly grant summary judgment where there is no evidence

"clear error," it is construed as one made pursuant to Rule 59(e).

from which a reasonable jury could find the "similarly situated" requirement satisfied).

Nevertheless, Mr. Mellor remained standing as a potentially suitable comparator for purposes of establishing Croons's prima facie case. Plaintiff, for his part, relied on an affirmation by Keith Richardson, a former CNYPC supervisory employee, to establish that Mr. Mellor had occupied a position identical to plaintiff's—that of a non-senior, non-supervisory SHTA. *Croons,* 18 F.Supp.3d at 204. Mr. Richardson's affirmation further claimed that Mr. Mellor had been given light duty in the Security Supervisor's Office at some point in the past five years even though he was entirely "uncertain as to the date" of that assignment. *Id.*

Defendants, for their part, did not dispute that Mr. Mellor had received light duty at some point in the past or that he was a fellow non-senior, non-supervisory SHTA. However, defendants submitted reply declarations attesting to a policy change that worked to preclude lower-level SHTAs from light duty assignments in the Security Supervisor's Office during the time period Croons was allegedly denied a light duty assignment in that office. *Croons,* 18 F.Supp.3d at 204. Further, defendants submitted medical evidence substantiating the time period during which Mr. Mellor actually worked a light duty assignment in that office. *Id.*

Here, Croons contends the May 12 Decision improperly discredited Mr. Richardson's affirmation in favor of defendants' reply declarations identifying this "policy change." *See* Pl.'s Mem. 4. But while plaintiff correctly asserts that the Decision expressed skepticism about the sufficiency of Mr. Richardson's affirmation, his further assertion—that the Decision's "grant of summary judgment rested on the credibility" of the reply declarations submitted by defendants—is so divorced from the plain language of the Decision that one is left to wonder whether it was even read before this claim was made.

As an initial matter, the May 12 Decision's skepticism regarding Mr. Richardson's affirmation was warranted in light of the Second Circuit's clear admonition that "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Croons,* 18 F.Supp.3d at 205 (citing *Hayes v. N.Y.C. Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir. 1996)).[3] Such skepticism would seem especially warranted where, as here, Croons's sole evidentiary support for Mr. Mellor's suitability as a comparator comes from Mr. Richardson's affirmation, which cites to no other record evidence and is sworn to on August 26, 2013, nearly a month after defendants had already moved for summary judgment on the basis of the existing record. *See* ECF No. 42.

It was also troubling that Mr. Richardson's affirmation contained no reference to any of the actual particularities regarding Mr. Mellor's light duty assignment or even any direct knowledge about plaintiff's suitability for light duty during the relevant time period. *See* FED.R.CIV.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). For instance, Mr. Richardson stated that he was "uncertain as to the date Mr. Mellor was given th[e] [light duty] assignment" in question but was nevertheless able to somehow conclude that it "*must* have been within the last [five] years." *Croons,* 18 F.Supp.3d at 205 (emphasis added). Similarly, Mr. Richardson was able to conclude that light duty

---

**3.** The so-called "sham issue of fact" doctrine is typically implicated where an individual submits an affidavit in opposition to summary judgment that tends to contradict his earlier sworn testimony. Although this doctrine is not limited exclusively to parties to the pending action, the Second Circuit has recently taken pains to limit its effective reach. *Moll v. Telesector Res. Grp., Inc.,* 760 F.3d 198, 205 (2d Cir.2014) (holding it was error for district court to conclude non-party witness's contradictory declaration "must [be]

disregard[ed]" and directing district court to consider, on remand, sworn statement of non-party in opposition to summary judgment motion). Although it does not appear Mr. Richardson was ever deposed in connection with this action, any concerns regarding whether this doctrine should have been applied are irrelevant here since, as discussed *infra,* Mr. Richardson's affirmation was nevertheless considered and credited by the May 12 Decision in the first instance.

must have also been available for plaintiff during his period of medical leave even though he simultaneously admits he was "not consulted about having [plaintiff] perform light duty." *Id.*

But all this quibbling is beside the point, because Croons's argument still fails for two simple reasons. First, despite expressing skepticism regarding Mr. Richardson's affirmation, the May 12 Decision goes on to expressly state that even *"[p]utting the sufficiency of Richardson's affidavit aside and construing those statements in Croons' favor for purposes of this motion,* plaintiff still cannot establish a prima facie case of discrimination." *Croons,* 18 F.Supp.3d at 205 (emphasis added). The May 12 Decision did not discredit Mr. Richardson's affirmation but rather went on to focus on what his affirmation, and, in fact, the remainder of the record evidence, was lacking: "[d]espite extensive discovery in this case, plaintiff has not identified a single non-senior, non-supervisory SHTA given light duty between the period of his injury on June 1, 2007 and his termination on July 13, 2008." *Id.* Indeed, the Decision credits Mr. Richardson's affirmation as the only apparent evidentiary support plaintiff ever identified to even substantiate Mr. Mellor's existence as a possible comparator. *Id.* ("Plaintiff has offered Mr. Mellor as the *only* other non-senior, non-supervisory white SHTA who was apparently *ever* afforded light duty in the Security Supervisor's office . . . ." (emphases added)); *see also* Pl.'s Mem. Opp'n Summ. J., ECF No. 47, 9.

Second, Croons's related claim—that the May 12 Decision then chose to improperly "credit[ ] defendants' assertion that there was a policy change"—completely ignores the plain language of the Decision, which further stated that:

> *Even assuming defendants' claimed policy change is irrelevant* and Mr. Mellor is an otherwise suitable comparator, the mere fact that a single white SHTA was given light duty in the Security Supervisor's of-

fice *at some point in the past while plaintiff was later denied it.* without anything more, does not suggest that defendants' failure to assign plaintiff light duty was motivated by some unlawful intent.

*Croons,* 18 F.Supp.3d at 205 (emphases added). Although defendants did submit reply declarations claiming a policy change, they also submitted medical evidence confirming that Mr. Mellor's light duty assignment in the Security Supervisor's office occurred from December 1, 2006 to January 9, 2007, months before Croons's initial injury and later clearance to light duty even occurred. *Croons,* 18 F.Supp.3d at 204 & n. 14. It was this medical evidence—not defendants' assertions of a policy change—that was relevant to a threshold determination about Mr. Mellor's suitability as a comparator. Mr. Richardson's generalized, conclusory assertion that Mr. Mellor had received light duty at some point "within the last [five] years" did not automatically necessitate a trial on this particular theory of recovery.[4]

Croons likewise suggests it was impermissible for the May 12 Decision to consider this medical evidence despite apparently first raising the issue of Mr. Mellor's light duty assignment by introducing Mr. Richardson's affirmation in opposition to defendants' already-pending motion. Of course, the Second Circuit has long recognized that "reply papers may properly address new material issues raised in opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Ref. Co. v. Oxygenated Mktg. & Trading,* 215 F.3d 219, 226–27 (2d Cir.2000) (citations omitted): *see also Dixon v. NBCUniversal Media, LLC,* 947 F.Supp.2d 390, 396 (S.D.N.Y.2013) ("A district court enjoys broad discretion . . . to rely on evidence submitted with the reply papers." (citations omitted)).

In any event, Croons then failed to seek leave to further address defendants' assertions of Mr. Mellor's irrelevance. *Travelers Indem. Co. v. Excalibur Reinsurance Corp.,* No. 3:11–CV–1209 (CSH), 2013 WL 4012795,

---

**4.** It certainly did not establish that light duty was provided to individuals other than Croons between July 1, 2007 and his termination effective July 13, 2008, since even that claim would only place Mr. Mellor's light duty assignment between August 26, 2008 and August 26, 2013. *See* ECF No. 42.

at \*2 (D.Conn. Aug. 5, 2013) (collecting cases and noting that "[w]hen new evidence appears in opposition papers, the non-moving party should seek leave, or may receive the Court's sua sponte permission, to file a sur-reply to address those new issues." (citation omitted)).

Given all this, Croons cannot seriously believe he is now entitled to claim that the mere assertion of some kind of policy change, a claim on which the May 12 Decision does not rest, entitles him to a trial on this theory of recovery. The affirmation plaintiff's counsel submitted in connection with this motion, which states that, "[u]pon information and belief, Erin Gerck (or similar spelling), another non-supervisory [w]hite SHTA, was given a light duty assignment in *a* supervisor's office and such accommodation was afforded this [w]hite employee after the alleged 'change in policy,' " does nothing to alter this reality. Bosman Aff., ECF No. 57, ¶ 4 (emphases added). This claim, even if credited, does not even bother to identify the particular supervisor's office at issue. It certainly does not establish that a similarly situated white employee received light duty in the Security Supervisor's Office during the time period plaintiff alleges having been denied it.[5]

In sum, Croons's initial burden was de minimis, not non-existent. *Robles v. Cox & Co., Inc.,* 987 F.Supp.2d 199, 206 (E.D.N.Y. 2013). Once the May 12 Decision determined that evidence existed to support a finding that (1) Mr. Mellor had in fact worked light duty at some point in the past, but (2) well outside the time frame Croons claims to have been denied it, the Decision concluded that (3) this single fact, without more, was insufficient to establish even the minimal inference of discrimination required to proceed on this particular theory of recovery.

Croons mistakenly conflates the relevance of "any light duty assignment ever given to any employee of CNYPC" with the relevance of "light duty assignments given to similarly situated employees outside plaintiff's own protected class during the time period he alleges having been denied them." Indeed, plaintiff himself testified that he had requested and received at least one light duty assignment in the past. *Croons,* 18 F.Supp.3d at 206 (noting "plaintiff had worked at CNYPC for over a year before his injury and had previously requested and received a light duty assignment"). Plaintiff may disagree with the Decision's conclusion, but it is disingenuous to attempt to paint its analysis as the product of a "clear error." Accordingly, plaintiff's motion with respect to this claim will be denied.

### 2. *Discovery Violations*

Croons next contends that defendants provided "false and/or inadequate responses to plaintiff's interrogatories." Pl.'s Mem. 6. Since plaintiff again neglects to specify the federal rule in which this particular argument is grounded, it is construed as one made pursuant to Rule 60(b)(3), since that provision provides a district court with discretion to grant relief in the case of "fraud ..., misrepresentation, or misconduct by an opposing party." FED.R.CIV.P. 60(b)(3).

 Specifically, Rule 60(b)(3) may be "invoked where material information has been withheld or incorrect or perjured evidence has been intentionally supplied." *Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs.,* 228 F.R.D. 125, 131 (N.D.N.Y.2005) (Sharpe, J.) (citation omitted), *aff'd,* 172 Fed. Appx. 382 (2d Cir.2006) (summary order). This provision requires the moving party to "demonstrate by clear and convincing evidence that the opponent's misconduct substantially interfered with his ability to fully and fairly prepare his case and defend the motion." *Id.*

Here, Croons asserts that although defendants "stated that there was no record of any request for reasonable accommodation by SHTA staff for the period of 2003 through 2008" in a response to plaintiffs discovery demands, they nevertheless submitted the reply documents, discussed above, confirming Mr. Mellor had actually received a light duty assignment during that time period. Pl.'s

---

5. It is notable that defendants have again submitted medical evidence confirming that counsel's

entirely conclusory assertion, made here without any apparent evidentiary support, is incorrect.

Mem. 6. Plaintiff contends that this misconduct prevented his counsel from examining "defendants' at their depositions concerning the circumstances behind Mr. Mellor receiving light duty or any alleged change in policy." *Id.*

 "It is true that in certain circumstances, the failure to produce documents requested in discovery can constitute 'misconduct' contemplated by Rule 60(b)(3)." *Travelers Cas. & Sur. Co.*, 228 F.R.D. at 132 (citing *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F.Supp.2d 309, 314–15 (S.D.N.Y.2003)). It is also true that Rule 60(b)(3) does not require a showing "that the outcome would have been different absent defendant's misconduct." *Catskill Dev., LLC.*, 286 F.Supp.2d at 316 (citations omitted). But even bearing in mind that Rule 60(b)(3) requires only a lesser showing of "substantial interference," the allegations here do not warrant relief pursuant to Rule 60(b). *See id.*

 First, and as they correctly note in opposition to this motion, defendants raised a timely objection to the discovery demand at issue here as, inter alia, "overly broad" and "unduly burdensome." Def.'s Mem. Opp'n, ECF No. 59-8, 9; Bosman Aff., Ex. A, ECF No. 57, 6–19. Defendants are further correct that plaintiff never sought to challenge these objections in a formal motion to compel. Def.'s Mem. 9–10.

Of course, Croons is also correct to note that, after making this series of objections, defendants indicated that "[w]ithout waiving these objections, defendants respond by stating that they do not have record [sic] of any reasonable accommodations requested by SHTA staff for the specified period." Bosman Aff., Ex. A, ECF No. 57, 6–19. Plaintiff seems to suggest that defendants, by this one claimed statement, were able to completely stymie his discovery efforts and that he did not become aware that any records existed for any SHTA staff at all during this broad time period until the now-infamous reply

brief containing Mr. Mellor's information was submitted as defendants' last word on the matter.

But that is clearly not the case here. These initial objections to Croons's demands were lodged on August 31, 2011, nearly two years before defendants eventually moved for summary judgment. As defendants note, plaintiff's counsel later made a series of more specific demands to examine employment records of particular SHTA staff at CNYPC, which were reviewed in camera by the assigned Magistrate Judge, who concluded that plaintiff "has not shown that these two personnel files of non-party individuals are relevant and material to the claims at issue." ECF No. 54.

Indeed, Croons's counsel noted in a December 21, 2012 letter to Magistrate Judge Dancks that there were "outstanding paper discovery issues" arising from defendants' initial objections. ECF No. 31. As particularly relevant here, plaintiff's counsel informed Judge Dancks that "[d]efendants objected to producing the employee files of other [SHTAs]" and that "[u]ltimately, this matter may require the Court's resolution." *Id.* Therefore, even if defendants' discovery responses initially led plaintiff to believe records for SHTA staff were unavailable, it is clear that plaintiff eventually became aware that some type of employment record for individual staff members existed.

Despite this knowledge, Croons never moved to compel production of any other documents he initially requested, either before or after he became aware that some type of record-keeping existed. Nor did he seek leave to complete additional discovery or otherwise attempt to flag defendants' alleged concealment of this information once defendants moved for summary judgment. Plaintiff's complaints here do not show, by clear and convincing evidence, that defendants' conduct warrants the extraordinary relief contemplated by Rule 60(b)(3).[6] Ac-

---

6. In any event, as already discussed at length above, the result about which Croons complains—that he was unable to depose defendants about the "alleged change in policy"—was irrelevant to the May 12 Decision's determination,

which was concerned with identifying only the timing of Mr. Mellor's light duty for purposes of plaintiffs initial, prima facie claim. Plaintiff's hypothetical additional discovery regarding Mr. Mellor would likely have been "of marginal rele-

cordingly, plaintiff's motion with respect to this claim will be denied.

### 3. New Evidence

■ Finally, Croons contends that he "has come into possession of newly discovered evidence" from a related, ongoing case. Pl.'s Mem. 7. Although plaintiff again fails to specify whether this particular argument is grounded in Rule 59(e) or Rule 60(b)(2), the distinction is irrelevant here because regardless of "[w]hether relief is sought under Rule 59(e) or Rule 60(b)(2), courts apply the same strict standard for determining what qualifies as 'newly discovered evidence.'" *Becnel v. Deutsche Bank AG,* 838 F.Supp.2d 168, 171 (S.D.N.Y.2011).

■ Specifically, evidence only qualifies as "newly discovered" if a movant can show: (1) the evidence was of facts that existed at the time of the dispositive proceeding; (2) he was justifiably ignorant of them despite due diligence; (3) the evidence is admissible and of such importance that it probably would have changed the outcome; and (4) the evidence is not merely cumulative or impeaching. *Becnel,* 838 F.Supp.2d at 171 (citing *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 392 (2d Cir.2001)).

Here, Croons's "newly discovered evidence" consists of documents plaintiff's counsel claims to have obtained in connection with an ongoing federal lawsuit against some of the same defendants sued here.[7] These documents "reference[ ] 115 employees" on Workers' Compensation Leave ("WCL") *or* light duty at various facilities around New York State, including CNYPC. Bosman Aff., Ex. B, ECF No. 57, 20–24. Plaintiff claims that defendants concealed this evidence so that they could "ambush plaintiff . . . regarding a 'policy change.'" Pl.'s Mem. 7.

This purportedly new evidence, which contains materials dated September 1, 2009, October 14, 2009, April 13, 2010, and June 8, 2010, does not bear on the time period at issue in the case at bar. It merely suggests,

at best, that light duty *or* WCL was assigned to personnel at CNYPC who occupied positions ranging from "SHTA" to "Supv SHTA" to "Nurse 2 Psych" to "LMSW 2" during this time period. Bosman Aff., Ex. B, ECF No. 57, 20–24. Plaintiff's counsel insists that these documents warrant the relief he seeks because defendants prevented him from examining witnesses as to their "import or meaning." Pl.'s Mem. 7. But this material does nothing more than establish that WCL *or* light duty was assigned to various personnel at certain times, a fact about which plaintiff cannot claim ignorance—he himself had testified to receiving such a light duty assignment in the past.

Croons again conflates the relevance of "any light duty assignment ever given to any employee of CNYPC" with the relevance of "light duty assignments given to similarly situated employees outside plaintiffs own protected class during the time period he alleges having been denied them." Plaintiff cannot demonstrate that this evidence, which post-dates the relevant time period at issue by over a year, "probably would have changed the outcome" of the Decision since, as discussed at length above, any alleged policy change associated with this assignment of light duty was irrelevant to the Decision's analysis. Accordingly, plaintiffs motion with respect to this claim will be denied.

### III. CONCLUSION

Croons has failed to demonstrate an intervening change in controlling law, the availability of qualifying new evidence, or the need to correct a clear error or prevent manifest injustice that would warrant relief pursuant to Rule 59(e), *Hollander,* 524 Fed. Appx. at 729, and has failed to present "highly convincing" evidence that his case is so exceptional as to warrant relief pursuant to the provisions of Rule 60(b). *See Lee v. Marvel Enters., Inc.,* 765 F.Supp.2d 440, 448 (S.D.N.Y.2011).

---

vance." *Catskill Dev., L.L.C.,* 286 F.Supp.2d at 315.

7. Notably, the plaintiff in that case, Keith Richardson, appears to be the same individual who

submitted the affirmation discussed at length above. *Richardson v. N.Y.S. Office of Mental Health,* 6:11–CV–1007.

Therefore, it is

ORDERED that

Croons's motion to alter the judgment is DENIED.

IT IS SO ORDERED.